INTERNATIONAL PARKING
MANAGEMENT, INC.,
**Plaintiff**

v.

**Alejandro Garcia PADILLA, Defendant.**

**Civil No. 06–2092 (JAG).**

United States District Court,
D. Puerto Rico.

Sept. 11, 2007.

Jose R. Ortiz–Velez, Ortiz Velez Law Office, San Juan, PR, for Plaintiff.

Francisco A. Ojeda–Diez, P.R. Department of Justice—Federal Litigation, San Juan, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is a motion for judgment on the pleadings, filed by plaintiff · International Parking Management,

Inc. ("IPM") on December 15, 2006. (Docket No. 10). On April 20, 2007, Magistrate Judge Camille Velez–Rive issued a Report and Recommendation ("R & R") to **DENY** the motion. Upon *de novo* review, the Court **ADOPTS** the R & R and **DENIES** the motion for judgment on the pleadings.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2006, IPM, a private, for-profit corporation organized under the laws of the Commonwealth of Puerto Rico, filed a complaint against defendant Alejandro Garcia–Padilla ("Garcia–Padilla" or "defendant"), Secretary of the Department of Consumer Affairs ("DACO"), in his personal and official capacity under Title 42 U.S.C. § 1983.

IPM duly executed summons on defendant Garcia–Padilla, who failed to timely answer the Complaint. On November 27, 2006, IPM filed a motion for entry of default, which the Court granted on the next day. On December 14, 2006, defendant filed a motion to set aside the entry of default. IPM then filed a "Motion for Judgment on the Pleadings or for Default Judgment" pursuant to Fed.R.Civ.P. 12(c) on December 15, 2006. The Court denied the motion to set aside and referred the Motion for Judgment on the Pleadings to Magistrate Judge Camille Velez–Rive ("Magistrate Judge") on December 19, 2006. On January 4, 2007, Secretary Garcia–Padilla filed a motion for reconsideration of the motion to set aside, which this Court denied on January 17, 2007.

IPM's suit challenges the constitutionality of Rule Number 8 of Regulation 6753–Regulation of Areas of Public Parking-promulgated by DACO and approved on January 22, 2004. The broader Regulation 6753 ("Regulation"), controls the operation of parking facilities in Puerto Rico. Rule Number 8 establishes the maximum amount of money per hour which operators of roofed and non-roofed parking facilities in Puerto Rico may charge users of these facilities. Roofed facilities built after June 7, 1986 are allowed an exemption from mandatory caps on the prices charged users of those facilities, while non-roofed facilities are not eligible for the exemption. The Complaint alleges that this exemption is arbitrary and capricious and that, since IPM operates both roofed and non-roofed facilities, such a distinction in effect deprives IPM of property without due process of law. It is further alleged that the regulation subjects IPM to dissimilar legal treatment, amounting to violations of due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution.

IPM seeks an injunction against defendant and his agents barring further enforcement of Rule Number 8, a declaratory judgment holding it unconstitutional because it violates due process and equal protection of the laws, and attorney's fees and costs of litigation under 42 U.S.C. § 1988.

On April 20, 2007, Magistrate Judge Velez–Rive issued a Report and Recommendation (R & R) in which she found that judgment on the pleadings was unwarranted because Rule Number 8, on its face and as applied: 1) was reasonably tailored to the legitimate state interest of attracting private investments in roofed parking facilities to meet the growing demand for public parking spaces; 2) satisfied rational basis review within the purview of the Regulation, which sought to strike a balance between providing incentives for private investment in public parking facilities and protecting consumers with price controls; 3) did not constitute a taking of private property without due process of law because IPM failed to first employ the Regulation's provision for administrative

review and reconsideration of maximum hourly parking rates set by DACO; and 4) did not violate the Equal Protection Clause because the classification lacked invidiousness or discriminatory animus. Finally, the Magistrate Judge concluded that Secretary Garcia–Padilla, in his personal capacity, would have been immune from IPM's § 1983 suit on the basis of the aforementioned findings.

## STANDARD OF REVIEW

A. *Standard for Reviewing a Magistrate Judge's Report and Recommendation*

■ A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R.Civ.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72(d), the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which the objection is made. *See United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater,* 8 F.Supp.2d 152, 154 (D.P.R. 1998). The Court may accept, reject or modify, in whole or in part, the Magistrate Judge's recommendations. "Failure to raise objections to the Report or Recommendation waives [that] party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992) (citations omitted).

B. *Standard for Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings is governed by Fed. R. Civ. P 12(c). Rule 12(c) allows a party "[a]fter the pleadings are closed but within such time as not to delay the trial, [t]o move for judgment on the pleadings." Because the court is tasked with rendering judgment on the merits at such an early stage in the proceeding, it must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor. *Id.* The Court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice. *Cf. In re Colonial Mortg. Bankers Corp.,* 324 F.3d 12, 15–16 (1st Cir.2003)(recognizing this principle in the context of Rule 12(b)(6)). There is no resolution of contested facts in connection with a Rule 12(c) motion; a court may enter judgment on the pleadings only if the relevant facts conclusively establish the movant's claim. *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988); *R.G. Financial Corp. v. Vergara–Nunez,* 446 F.3d 178, 182 (1st Cir.2006).

## DISCUSSION

A. *IPM's Objections to the R & R*

IPM filed an objection to the R & R on May 4, 2007 and a supplemental objection on May 7, 2007. IPM submits that the Magistrate Judge exceeded her authority in finding "purported legitimate state interests" behind the distinction between roofed and unroofed facilities. (Docket No. 30–1 at 5; Docket No. 31–2 at 5). The Magistrate Judge identified the state's economic interests in the regulation of public parking rates via the Regulation's Rule 3, "general purposes" provision. Based on this provision, the Magistrate Judge surmised that the central purpose of

Rule 8 was essentially encapsulated by Rule 3, to wit, to meet the growing demand for public parking spaces by stimulating private sector construction of new public parking facilities, while regulating these businesses as to the maximum rates they may charge consumers and as to the conditions of public security and convenience. (Docket No. 29 at 9).

Recognizing the economic nature of the Regulation, IPM walks through a brief twentieth-century history of the evolution of the United States Supreme Court's doctrine of judicial review of equal protection challenges to economic legislation. Pointing to *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985), where the Court ruled that Alabama's goal of developing its insurance industry was impermissibly advanced by imposing a higher tax rate to foreign insurance companies than domestic insurance companies, IPM maintains that economic legislation laden with discriminatory purposes is not immune from constitutional attack.

Next, IPM agrees with the Magistrate Judge in finding that Rule 3 of the Regulation states the general purposes of the Regulation. Noting, however, that the remainder of the Regulation, particularly Rule 8, is silent as to its purposes, IPM departs from the Magistrate Judge's reasoning harmonizing Rule 8 with Rule 3. Here, IPM attempts to analogize Rule 8 with the legislation struck down in *Metropolitan Life Insurance Co.* by asserting that the distinction cannot possibly advance the Regulation's general purposes or those purposes identified by the Magistrate Judge.

IPM bases this charge on two arguments: First, that the Regulation rests upon faulty assumptions, namely, that roofed facilities are more secure than unroofed facilities and inherently have more parking spaces. Second, that the distinc-

tion paradoxically reduces the number of new unroofed parking spaces by discouraging investment from less financially established outfits that would otherwise rely on the profits incurred from unregulated hourly parking rates. To further the contention that the need for more public parking spaces is a disingenuous state interest, IPM notes the ostensibly clashing goals between the billions of dollars invested by the government of Puerto Rico in public transportation to reduce automobile congestion in the San Juan Metropolitan area, and the aims of the Regulation.

B. *Analysis*

Since the Magistrate Judge applied rational basis scrutiny to the challenged Regulation in order to assess the merits of IPM's due process and equal protection claims, this Court reviews *de novo* the proper tier of judicial scrutiny to apply, and then considers the individual constitutional claims in kind.

1. *Rational Basis as the Proper Level of Judicial Scrutiny*

The Magistrate Judge described the Regulation as "one geared toward purely economic and commercial ends and as affected by [Rule] Number 8 on public parking facilities." (Docket No. 29 at 5). This Court is in agreement with that description. According to its Rule 1, the Regulation was adopted and promulgated in conformity with the powers bestowed on the Secretary of the DACO by virtue of Law No. 120 of June 7, 1973, Law No. 5 of April 23, 1973 and Law No. 170 of August 12, 1988, as respectively amended. Law No. 120 empowers the Secretary to, *inter alia*, regulate the operation of public parking areas, including fixing the rates to be charged in said public parking areas. 23 L.P.R.A. § 807(1). Law No. 5 more generally empowers the Secretary to, *inter*

*alia,* regulate and fix the prices on goods, products and services that are rendered and charged by the hour in Puerto Rico, and to protect consumers from unjustified raises in prices and the erosion of consumer purchasing power through the promulgation and enforcement of regulations. 3 L.P.R.A § 341e(a). Finally, Law No. 170 grants DACO, among other administrative agencies, the authority to issue regulations in the resolution of administrative matters affecting the public policy of Puerto Rico. 3 L.P.R.A. § 2101.

Thus, since the Regulation, in conjunction with these laws, is promulgated and enforced in order to govern a particular sphere of Puerto Rico's economic activity, and IPM complains of an unlawful taking of profit resulting from that Regulation, it is obvious that IPM's constitutional challenges invoke a clash between individual economic rights and the state's power to regulate its own economy.

In light of the nature of the Regulation and the economic injury claimed, it is clear that the proper judicial inquiry will employ a means-end analysis under rational basis review.[1] The rational basis test applies to state and local government action via the Fourteenth Amendment, since those claims subject to that review—due process and equal protection—apply to the states. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980)(reaffirming incorporation of the Fifth Amendment's prohibition against taking of private property without due process of law into the states); *See also Lovato v. New Mexico,* 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (1916)(due process under the Fifth Amendment applies to those persons within the jurisdiction of U.S. territories). Thus, the question presented is whether Puerto Rico's application of a maximum public parking rate to non-covered parking facilities and not to covered parking facilities constructed subsequent to June 7, 1986 is rationally related to its efforts to meet the growing demand for public parking spaces by stimulating private sector construction of new public parking facilities while protecting the consumer from price inflation.

### 2. Roofed and Non-roofed Classification as a Violation of Equal Protection

The crux of IPM's equal protection argument is that the exemption erects a financial hurdle to those less-established outfits seeking to break into the business of constructing and operating roofed facilities, and fails to set forth a legitimate "public interest" by not including any roofing specifications. (Docket No. 1 at 7). Consequently, Rule 8 creates, without a rational basis, two different economic classes of parking facility operators, those with the financial wherewithal to roof their facilities and those without. IPM also alleges, without elaboration, that "market and geographic factors further complicate the process and render the Regulation unavoidably unconstitutional." (Docket No. 1 at 7.)

This Court is in agreement with the Magistrate Judge's conclusion that IPM fails to demonstrate either that the exemption raises the specter of discriminatory animus, violates a fundamental right, or treats similarly situated parking facility operators so differently as to be wholly irrational. Rather, the exemption is rationally related to a legitimate government interest. In subjecting this Regulation to

---

1. Furthermore, IPM's motion does not urge the Court to employ heightened scrutiny. Instead, it injects the language of rational basis review, alleging the Regulation's roofed and non-roofed distinction is "unreasonable, arbitrary and capricious ..." and "[s]erve[s] no reasonable government goal." (Docket No. 10 at 8)

equal protection scrutiny, we cannot disregard the maxim that "[t]he prohibition of the Equal Protection Clause goes no further than invidious discrimination." *Williamson v. Lee Optical Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). It is axiomatic that "[s]ocial and economic legislation ... that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate government purpose." *Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981). Such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 82–84, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). The burden of demonstrating that a legislative act, which adjusts the interlocking economic rights and duties of businesses and government, is irrational, falls squarely on the one complaining of the act's conflict with the Constitution. *Williamson v. Lee Optical Inc.,* 348 U.S. at 487–88, 75 S.Ct. 461. The burden is a severe one, requiring that the plaintiff "negative every conceivable basis which might support the state's actions." *Heller v. Doe by Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

In this case, the Court cannot overlook that Rule 8 does not exist in a vacuum. It operates within the broader context of the Regulation and pursuant to Law 120, Law 5, and Law 170. *See Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); see also *United States v. Stew-*

*art,* 311 U.S. 60, 64, 61 S.Ct. 102, 85 L.Ed. 40 (1940)(explaining that "all [statutory and regulatory] acts *in pari materia* are to be taken together as if they were one law") (italics in original).

Rule 8 of the Regulation provides, in pertinent part, that "[t]he covered public parking areas, which begin to be constructed subsequent to June 7, 1986, may be exempted from rates control. To obtain said exemption, the operator must request in writing from the Secretary the issuance of a special authorization." In addition, the Secretary must include in the special authorization, the expiration date of the authorization. "In order to set the said date the financing period of the construction shall be taken into consideration. In the cases in which such financing does not exist, the expiration date shall be fifteen (15) years from the issuance of the authorization." Furthermore, Rule 3 of the Regulation reads:

The growing demand for more parking areas, mainly in the zones of greater population and commercial growth make it necessary that the Department review and exercise the regulatory power entrusted to it by legislation, in a manner which allows and stimulates the investors of the private sectors in the construction of new parking areas.

In protection of the public interest, said business must be regulated in regards to the maximum rates which may be charged and in regards to the security conditions and convenience for the public.

Reading the statutory scheme together rebuffs IPM's averment that the exemption is not rationally related to the goals of Rule 3. The Court is hard-pressed to say that the provision reflects a policy judgment that is so clearly irrational as to rise to the level of invidious discrimination and to require the substitution of a judi-

cially crafted one. Defendant's enforcement of Rule 8 may not always succeed in generating adequate investment for the construction of secure and convenient parking facilities or protecting consumers from unreasonable parking rates. It may even be inconsistent with past, present and future planned government policies or actions. The Rule, however, need not be logically consistent in every respect with its aims to be constitutional. *Williamson v. Lee Optical Inc.*, 348 U.S. at 487–88, 75 S.Ct. 461; *See also Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 813, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976) ("a statutory classification impinging upon no fundamental interest ... need not be drawn so as to fit with precision the legitimate purposes animating it"). Nevertheless, the exemption genuinely strives to offer a financial incentive for the private sector to construct more covered parking areas, especially in urban areas with more limited space, and thus achieve more parking spaces per square footage.

Furthermore, there is no merit in IPM's charge that because the assumptions underlying the goals of the Regulation are flawed, Rule 8 cannot possibly advance the economic interests of the state. Without IPM demonstrating why covered, leveled parking facilities cannot offer more parking spaces and are less secure and less protective than non-covered facilities, common sense and the judgment of DACO dictates that reliance on these assumptions is a wiser choice. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)(rational basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness or logic of legislative choices."). As with the bygone days where courts used the Due Process Clause to strike down laws that were unwise and improvident, here too, this Court refuses to do the same under the aegis of equal protection, provided the classification is not suspect or invidious. *See Williamson v. Lee Optical Inc.*, 348 U.S. at 487–88, 75 S.Ct. 461 (rejecting the era of *Lochner* when state legislation was more vulnerable to due process challenges). IPM has simply not carried its burden to show these assumptions infect Rule 8 so insidiously as to render it arbitrary and capricious. *Id.* at 487–88, 75 S.Ct. 461. Nor has IPM given any explanation how "market and geographic factors" compound the invalidity of Rule 8. In light of the presumption favoring Secretary Garcia–Padilla's judgment and competency on the prices of goods and services affecting consumers, this Court will not guess what those "factors" are and then postulate their constitutional significance.

The Court also does not find that the June 7, 1986 cut-off date and the 15–year expiration period render the Regulation unconstitutional. While neither Rule 8 itself nor the legislative history behind it explain or justify the June 7, 1986 date for effectuation of the exemption and the 15–year period until expiration of the exemption, the silence of these provisions alone does not render Rule 8 unconstitutional. The same holds for the Rule's absence of roofing specifications. For purposes of rational basis review of equal protection challenges, a government decision maker need not articulate at any time, the purpose or rationale supporting its classification. *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Indeed, even without any source materials to provide the basis for a state's actions, the government is presumed to have acted constitutionally. *See McDonald v. Board of Election Comm'rs of Chicago*, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969)(a legitimate state purpose may be ascertained even when the legislature or administrative history is silent). As the Magistrate Judge correctly implied, the relation between the Regulation's means

and its end is rational enough to overcome the seemingly arbitrary cutoff date and expiration period provisions.

Rational basis scrutiny does not require the regulation to be an architectural blueprint or to be self-justificatory in every respect. *See Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)("A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality") (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911)). *See also Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) ("The rationality commanded by the Equal Protection Clause does not require states to match ... [nonsuspect] ... distinctions and the legitimate interests they serve with razorlike precision."). It is at least conceivable that defendant wanted to provide a financial benefit to prospective builders of roofed parking facilities and those who had already constructed such facilities after June 7, 1986, but decided to impose a cutoff date so as to not allow for the exemption of *every* roofed facility ever constructed. It is also plausible that the 15–year period for exemption was calculated to help offset the burden of financed construction costs paid back over a reasonable period of time. However, the degree of accuracy of court-supplanted rationales need not matter. The provisions satisfy equal protection scrutiny so long as such a conceivable state of facts could arguably bear a rational relation to stimulating private construction of public parking facilities and protecting the consumer from unhindered parking prices. *McDonald v. Board of Election Comm'rs of Chicago*, 394 U.S. at 809, 89 S.Ct. 1404. An examination of the challenged provisions within the scope of the Regulation convinces the Court that they have this effect. They are not so attenuated from the Regulation's general purposes as to insult the meaning of equal protection.

Lastly, IPM's reliance on *Metropolitan Life Insurance Co.* is misplaced. In *Metropolitan Life Insurance Co.*, the Court found that Alabama's aims to promote its domestic insurance industry and encourage investment in its assets and securities were illegitimate state goals because the tax scheme employed to achieve them heavily favored domestic insurance companies over foreign ones. Consequently, it drew an impermissible classification based on residence. Alabama's purpose was found to be parochially discriminatory because it attributed higher tax liability to *all* foreign insurance corporations seeking to do business in Alabama, regardless of the cost to them. Thus, the case triggered the longstanding principle that the Equal Protection Clause forbids a state to discriminate in favor of its own residents solely by burdening the residents of other states. *See, e.g., WHYY, Inc. v. Glassboro*, 393 U.S. 117, 119–20, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968); *Wheeling Steel Corp. v. Glander*, 337 U.S. 562, 571, 69 S.Ct. 1291, 93 L.Ed. 1544 (1949); *Hanover Fire Ins. Co. v. Harding*, 272 U.S. 494, 511, 47 S.Ct. 179, 71 L.Ed. 372 (1926).

No such suspect classification is invoked here. Moreover, unlike in *Metropolitan Life Insurance Co.*, where foreign corporations had no alternative to avoid the tax, IPM is not outright punished, without exception, for the nature of its business. It merely cannot receive a state-bestowed privilege inasmuch as its own financial limitations prevent it from constructing and operating roofed facilities. Indeed, to obtain the privilege, an operator must still apply and receive special authorization from the Secretary. IPM is not statutorily precluded from availing itself of the exemption, as it is legally available to all

similarly situated businesses. Without IPM's explanation of *how* the Regulation is as circumstantially restrictive as the cited case law, the claim lacks support for an analogy between the classifications.[2]

Thus, in the face of this relatively relaxed standard of review and the stringent requirements necessary to overcome it, no equal protection violation lies.

### 3. *Price Control as Amounting to "Taking" of Property Without Due Process of Law*

The analysis in section B(2), reveals that Rule 8 does not constitute a taking of property without due process of law, as argued by IPM.

First, a long list of cases regarding claims of governmental takings by price controls confers on Rule 8 a general presumption of constitutionality, provided certain due process conditions are met. As in the equal protection context, in the realm of governmental price regulation of the products and services provided by private businesses, the guaranty of due process reaches only so far as to curtail laws and regulations that are arbitrary and discriminatory in their operation and effect. *Nebbia v. People of New York*, 291 U.S. 502, 510–511, 54 S.Ct. 505, 78 L.Ed. 940 (1934); *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 769–70, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). The Supreme Court has long recognized that a legitimate and rational goal of price or rate regulation is the protection of consumer welfare. *See, e.g., In re Permian Basin Area Rate Cases*, 390 U.S. at 770, 88 S.Ct. 1344; *See also FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 610–12, 64 S.Ct. 281, 88 L.Ed. 333 (1944)("The primary aim of the [Natural Gas Act] was to protect consumers against exploitation at the hands of natural gas companies"). *See also Bowles v. Willingham*, 321 U.S. 503, 518, 64 S.Ct. 641, 88 L.Ed. 892 (1944)(one purpose of rent controls is "to protect ... consumers, wage earners from undue impairment of their standard of living."). "[T]he Constitution does not forbid the imposition, in appropriate circumstances, of maximum prices upon commercial and other activities." *In re Permian Basin Area Rate Cases*, 390 U.S. at 768, 88 S.Ct. 1344 (holding as constitutional federal regulation of gas rates charged by utility companies); *See also Olsen v. State of Nebraska*, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1941) (rejecting the claim that a state statute regulating commissions charged by private employment agencies amounted to a taking without due process); *See also Pennell v. City of San Jose*, 485 U.S. 1, 11, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988)(discussing as legitimate the City of San Jose's asserted purpose of preventing excessive and unreasonable rent increases caused by the growing shortage of and increasing demand for housing). Furthermore, "legislators and administrative agencies may calculate rates for a regulated class without first evaluating the separate financial position of each member of the class." *In re Permian Basin Area Rate Cases*, 390 U.S. at 769, 88 S.Ct. 1344; *See also Bowles v. Willingham*, 321 U.S. 503, 518, 64 S.Ct. 641, 88 L.Ed. 892 (1944)(citing *Munn v. Illinois*, 94 U.S. 113, 24 L.Ed. 77 (1876) for support). No constitutional objection gains force merely because "high cost operators may be more seriously affected ... than others." *Bowles v. Willingham*, 321

**2.** In fact, in *Metropolitan Life Insurance Co.*, 470 U.S. at fn. 10, 105 S.Ct. 1676, the Court specifically noted that the case did not question the state's broad power to regulate its own economy. Since this Regulation operates, both on its face and as applied, pursuant to laws, which vest in the Secretary of DACO the power to control the prices of goods and services within its borders, this case more readily implicates such powers.

U.S. 503, 518, 64 S.Ct. 641, 88 L.Ed. 892 (1944).

Although the circumstances of *some* of these landmark cases involved federal regulation of commercial rates and are not factually symmetrical to the case at bar, the principles and reasoning behind them apply to state regulations as well. The validity of Rule 8 is strongly supported by them and can only be overturned by demonstrating that the Rule irrationally and capriciously departs from the ends Puerto Rico purportedly seeks to achieve. *Nebbia*, 291 U.S. at 510–511, 54 S.Ct. 505; *See also Stone v. Farmers Loan and Trust Co.*, 116 U.S. 307, 345, 6 S.Ct. 1191, 29 L.Ed. 636 (1886) (a useful benchmark for a taking is that the "power to regulate is not the power to destroy."). Consequently, due process analysis need only be guided by the governing test in *Nebbia*, which concerned the constitutionality of a state statute fixing the domestic price of milk. Since this Court has already concluded that the allegedly unconstitutional provisions of Rule 8 bear some relation to the goals imputed to the Regulation, there is no basis for a facial or as-applied taking without due process.

Even without the modern jurisprudence of due process illuminating the Court's review, a straightforward reading of the Regulation shows that it contains constitutionally sufficient procedural safeguards. The Regulation was crafted with the understanding that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Although *Mathews* required a three-part test in determining whether the procedures provided to administratively resolve takings claims satisfy due process, it is not necessary to apply it here since IPM does not challenge the constitutionality of the Regulation's admin-

istrative remedies. Nevertheless, "[d]ue [p]rocess is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). At a minimum, some form of hearing is required before an individual is finally deprived of a property interest by the government. *Id.* Unequivocally, the Regulation meets this requirement in the administrative remedies it affords public parking operators.

As the Magistrate Judge noted, the Regulation provides for administrative claims to be filed and reviewed upon holding a hearing, pursuant to procedures established under Law No. 170 of August 12, 1988, as amended. Moreover, under that administrative rubric, the operator may also request reconsideration of the resolution establishing the maximum rate once annually if the operator deems that it is not obtaining a reasonable profit. To be sure, this provision strives to ensure a more objective and fair review by requiring the operator to submit to the Secretary its financial statements and other documents when requested. It is noteworthy that even DACO's resolution must be grounded in financial analysis. To establish the maximum rate, DACO must consider a report of income and expenses of the operator's business, evidence of costs, and vehicular movement.

IPM makes no showing that it availed itself of these administrative mechanisms before filing suit in this judicial forum. IPM also does not submit any set of well-pleaded facts or empirical evidence upon which the Court could conclude that the hearing and review provisions were wholly inadequate and unfair by failing to reinstate an hourly fare that would fetch a reasonably competitive profit. Further, IPM's pleadings do not show that the provisions *actually* unjustly deprive so much

profit from operators without proper remedy as to be confiscatory. IPM has not overcome its burden by demonstrating how the exemption, on its face, and as applied, amounts to an unreasonable deprivation of its profit and that the Regulation's built-in administrative procedures violate due process. Accordingly, there is no merit in IPM's claim that Rule 8 deprives it of a property interest without due process.

### 4. *Section 1983 liability*

The Court agrees with the Magistrate-Judge's conclusion that defendant Alejandro Garcia Padilla is entitled to qualified immunity.

In evaluating whether an official is entitled to qualified immunity, the court employs a three-part test, asking "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir. 2004). The threshold question of whether a constitutional right has been violated is significant, for it can spare a defendant from standing trial and from other burdens of litigation. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Indeed, these concerns compel courts to dispose of this initial inquiry first before proceeding to the second and third prongs of the test. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

Construing the relevant facts and inferences most favorably to IPM, the pleadings fail to state a constitutional violation sounding either in equal protection or due process, and thus, open the door to qualified immunity. As the Magistrate Judge concluded, consistent with the language of § 1983, "[t]here is no showing in plaintiff's complaint [that] defendant Secretary Garcia Padilla's conduct in his personal capacity deprived a person of rights, privileges or immunities secured by the Constitution of the United States." (R & R at 194). § 1983 does not confer substantive rights. It solely provides a venue for vindicating federal rights elsewhere conferred. *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Therefore, the Court's finding that the provisions of Rule 8 bear a reasonable relation to the broader Regulation's general purposes—to wit, that they are not arbitrary and capricious—forecloses the antithetical claim of their Fifth and Fourteenth Amendment infirmities. Liability could not flow to defendant through personal actions relating to the execution and enforcement of a constitutional Rule 8.

### CONCLUSION

For the aforementioned reasons, the Court **ADOPTS** the R & R and, accordingly, **DENIES** IPM's motion for judgment on the pleadings. Judgment shall be entered dismissing the complaint.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### I. PROCEDURAL BACKGROUND

On October 30, 2006, plaintiff International Parking Management, Inc. ("International Parking"), a private corporation for profit organized under the laws of the Commonwealth of Puerto Rico, filed a complaint against defendant, Alejandro García Padilla ("Secretary García Padilla") as the Secretary of the Department of Consumer Affairs ("DACO"), in his personal and official capacity.

Defendant Secretary García–Padilla was duly served with summons and failed to answer a timely complaint. Default was entered. The Court thereafter denied a motion to set aside default, as well as defendant's motion for reconsideration. The matter was referred to this Magistrate Judge for default judgment and for report and recommendation. After the scheduling of a default hearing, plaintiff International Parking moved for judgment on the pleadings clarifying there was no need for an evidentiary hearing since the issues rested on legal contentions and it was not seeking monetary damages.

It is now proper to resolve plaintiff International Parking's motion for judgment on the pleadings, without the benefit of defendant Garcia–Padilla's position. **(Docket No. 10).**

## II. INTRODUCTION

Plaintiff International Parking's claim is predicated under Title 42, *United States Code,* Section 1983, a civil rights violation. Plaintiff submits Rule No. 8 of the regulation for the operation of parking facilities in the Commonwealth of Puerto Rico, approved on January 22, 2004, establishes the maximum amount of money per hour which operators of parking facilities in Puerto Rico may charge. International Parking avers a distinction in said Rule 8 as to parking facilities that are roofed and those that are non-roofed, and the exemption to said regulation by those roofed parking facilities, are arbitrary and capricious and, thus, unconstitutional in violation of the Fifth and Fourteenth Amendments of the United States Constitution. As such, plaintiff International Parking is claims being deprived of property without due process of law and is also object of an equal protection violation.

Plaintiff International Parking filed this federal action seeking a declaratory judgment holding the provisions of Regulation No. 8, as applied to public parking areas, are unconstitutional and, thus, null and void. Plaintiff also seeks to obtain attorney's fees and costs of litigation.

## III. STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

When deciding a Motion for Judgment on the Pleadings, the standard appear under Federal Rule of Civil Procedure 12(c). The Court must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiffs' favor. Federal Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed but within such time as not to delay the trial." *Id.* Because such motion in the majority calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the non-movant and draw all reasonable inferences therefrom to the non-movant's behoof. *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004). The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice. There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point. *Rivera–Gomez,* 843 F.2d at 635. *See R.G. Financial Corp. v. Vergara–Nuñez,* 446 F.3d 178, 182 (1st Cir. 2006).

In the instant case defendant Secretary García Padilla is in default as the Court denied the petition to set it aside and the request for reconsideration. Thus, this Magistrate Judge finds herself in a most

odd situation of construing as an oracle among the alleged mist of unconstitutionality raised by plaintiff against a Sovereign without not even a glance of its position, inference, interpretation or discussion or any background information of the evolution of state law provisions as a spin-off legislation from a chosen date of 1986. Since there is no answer to the complaint nor any discovery has been conducted, the constitutional issues are just approaching their embryonic pretrial stages.

However, a motion for judgment on the pleadings and a motion to dismiss are ordinarily accorded much the same treatment. *See Collier v. City of Chicopee,* 158 F.3d 601, 602 (1st Cir.1998); *Lanigan v. Vill. of E. Hazel Crest,* 110 F.3d 467, 470 n. 2 (7th Cir.1997). One must view the facts contained in the pleadings in the light most flattering to the non-movants (herein the defendants) and draw all reasonable inferences therefrom in their favor. Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment. *Rivera–Gomez,* 843 F.2d at 635. There is, of course, a modest difference between Rule 12(c)and Rule 12(b)(6) motions. A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole. *See Aponte–Torres v. University Of Puerto Rico,* 445 F.3d 50, 54–55 (1st Cir.2006).

## IV. LEGAL DISCUSSION

### A. Constitutional Claims.

Plaintiff claims an equal protection violation in Regulation No. 8 as a non-roofed public parking facility and as to others similarly situated vis a vis parking facilities which are roofed and may solicit a special authorization to be exempt from said regulation.

██ Constitutional law development has established purely economic classifications will be upheld against equal protection challenges if they are rationally related to a legitimate governmental interest. U.S.C.A. Const.Amend. 14. A presumption of rationality attaches to classifications which do not involve a suspect classification or impinge upon fundamental rights. While the First Amendment on its face does not specifically mention the right to freedom of association, the Supreme Court has declared that the First Amendment encompasses a right to "associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *See Roberts v. United States Jaycees,* 468 U.S. 609, 622, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984) (holding that the freedom of association must yield to "regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms").

The Supreme Court has afforded constitutional protection to freedom of association in two distinct senses. First, the Court has held the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities. *Board of Dirs. of Rotary Int'l v. Rotary Club,* 481 U.S. 537, 544, 107 S.Ct. 1940, 1945, 95 L.Ed.2d 474 (1987). None of these associations is invoked in the present action, rather one geared towards purely economic and commercial ends and as affected by Regulation No. 8 on public parking facilities.

██ As a general rule, federal courts, respecting the right of local self-determi-

nation, employ the prophylaxis of the equal protection clause only to ensure the existence of some rational relationship between a challenged statute and the legitimate ends of local government. *See, e.g., Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988). As a matter of federal constitutional law, the Commonwealth of Puerto Rico needs only to demonstrate a rational basis for the laws and regulations herein in order to defeat an equal protection challenge. *See Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981) ("Social and economic legislation that does not employ suspect classifications or impinge on fundamental rights must be upheld … when the legislative means are rationally related to a legitimate government purpose."); *see also Tenoco Oil Co. v. Dept. of Consumer Affairs,* 876 F.2d 1013, 1021 (1st Cir.1989). "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (*per curiam*).

 The concurring opinion in *Roberts* is illustrative of the freedom of association when constitutional violations are raised, as in the instant case. Once it is determined whether the association is considered expressive or commercial, the degree of constitutional protection it requires can be properly assessed. If the association is expressive, it would be entitled to full First Amendment protection of both the content of its message and the choice of its members, without need for a connection between the group's message and its membership policy. If on the other hand, if the association is commercial, as in the instant case, it "enjoys only minimal constitutional protection of its recruitment, training, and solicitation activities" and the regulation claimed as discriminatory need

be only rationally related to the government's ends. "The Constitution does not guarantee a right to choose employees, customers, suppliers, or those with whom one engages in simple commercial transactions, without restraint from the State." *Roberts,* 468 U.S. at 634–35, 104 S.Ct. 3244. *See also New York State Club Ass'n v. City of New York,* 487 U.S. 1, 20, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) ("Predominately commercial organizations are not entitled to claim a First Amendment associational or expressive right to be free from the anti-discrimination provisions triggered by the law.").

 Likewise, in affirming the constitutionality of *e.g.,* anti-trust laws, the Supreme Court determined by definition such laws regulate the ways in which market players may pool their capabilities to acquire market power. While a State cannot regulate the right of speakers to band together to convey a common message in the marketplace of ideas, it certainly could exercise control over the efforts of market players to exploit the principle of strength in numbers in the marketplace of goods. *See United States Jaycees,* 468 U.S. at 638, 104 S.Ct. 3244 (1984) (positing that "there is only minimal constitutional protection of the freedom of commercial association," *id.* at 634, 104 S.Ct. 3244, and that, in all events, "no First Amendment interest stands in the way of a State's rational regulation of economic transactions by or within a commercial association"). *See also* Kathleen M. Sullivan, *Free Speech and Unfree Markets,* 42 U.C.L.A. L.Rev. 949, 950 (1995) (*observing* that, in the modern constitutional order, legislatures are free to pass laws "that override private economic arrangements on allocative grounds-such as correcting for collective action problems, externalities, information asymmetries, or monopolies-or for reasons of redistribution or paternalism"). *See*

*Wine and Spirits Retailers, Inc. v. Rhode Island,* 418 F.3d 36, 51–52 (1st Cir.2005).

In light of the above discussed, it is now proper to discuss the regulation enacted by Secretary García Padilla, which plaintiff International Parking objects on constitutional grounds.

■ Defendant Secretary García Padilla, as Secretary of DACO, promulgated a regulation to develop the public policy of the Commonwealth of Puerto Rico pursuant to Law No. 120 of June 7, 1973, Law No. 5 of April 23, 1973 and Law No. 170 of August of 1988, as amended, which creates and grants power and authority to DACO.

Plaintiff's contentions of a constitutional violation are rooted in being denied the equal protection of the laws when "Regulation No. 8", governing public parking facilities, provides that roofed parking business are exempt and further limited such application to roofed parking built after June 7, 1986. Plaintiff International Parking, as uncovered parking facility would be governed by the applicable regulations and the corresponding maximum rates allowed by DACO. Thus, it is plaintiff's contention that to adopt such a date without any reasonable justification results in an arbitrary and capricious application of said regulation.[1]

Equal protection does not forbid all kind of classifications, but invidious ones, those which treat persons differently who are in all relevant respects alike. Still, classifications may be rationally related to a legitimate government interest and if these do not burden a fundamental right or target a suspect class, only a rational basis standard analysis is required to sustain same.

The general purposes of the Regulation for Public Parking Areas, Regulation No. 6753, approved January 22, 2004, acknowledge the demand for more parking areas. On one hand, it aims to foster private investors to construct and build new parking areas. On the other hand, it attempts to protect public interest to regulate this type of business as to maximum rates they could charge and the conditions of safety and convenience for the public. It exempts those parking areas that have no direct profit as a goal and which may be used by customers, clients or individuals related to a business or activity being carried out.

As to public parking areas for profit in general, roofed and unroofed, the regulation provides for compliance with several provisions, including granting, renewal and withdrawal of licenses or permits, provides for administrative reviews of objections, establishes requirements for the operation of these parking areas and establishes a maximum rate to be charged to individuals who use the parking areas.

Plaintiffs herein are objecting on constitutional grounds Regulation No. 8 regarding the maximum rate applicable either for roofed or open-air parking facilities.[2] Regulation 8, item E provides for roofed public parking areas that are built after June 7, 1986, may be exempt from control over their rates. To request such an exemption, and be provided with a special authorization, the Secretary of DACO

---

1. Plaintiff International Parking failed to submit the regulation referred to in its motion for judgment of the pleadings and the available copy obtained by this Magistrate Judge is the one filed with the Department of State in the Spanish language. Thus, plaintiff has not submitted the English language document nor the translation of the pertinent portions of the regulation which serve as ground for its claim.

2. Regulation No. 4 also refers to public parking areas in open plots of lands by providing the endorsement of the Department of Natural Resources regarding the trees to be placed as per Law No. 37 of January 3, 2003, must also be complied.

would determine the date said authorization becomes due upon considering the financing period of the construction, and if there is no financing, the special permit then becomes due or expires fifteen (15) year from the granting of the special authorization.

Plaintiff avers that the selected date of June 7, 1986 is not explained or justified in the available record. As such, plaintiff considers the application of this exemption for roofed public parking as arbitrary and capricious.

Plaintiff avers this regulation does not seem to advance any legitimate government goal and deprives plaintiff and other similarly situated unroofed public parking facilities of the equal protection of the laws and also constitutes a taking of property without due process of law. Declaratory judgment and injunctive relief sought by plaintiff fails to discuss or debate whether a public interest is involved when the incentive by "Regulation 8" as to roofed public parking areas is provided pursuant to the intention of its provisions. These constitutional claims are predicated in that Regulation No. 8 imposes upon an operator of a non-roofed facility a maximum fare to be charged per hour, without imposing any such restriction upon any operator of a roofed parking facility, in any form or fashion.

A mere reading of the whole regulation, as it is registered with the Department of State of the Commonwealth of Puerto Rico, not a mere recital of Regulation No. 8, refutes plaintiff's presentation.[3] Still, even without the benefit of defendant's position, disregarding the date therein of June 7, 1986, there is a rational basis for the exemption when dealing with a public parking building or construction, that is, roofed facilities. It becomes evident it is more costly to operate a public parking area when it entails a construction and not an open space. For this reason, it provides an incentive for making such an investment when the end result would be more parking footage per area, which is part and parcel of the motives explained in the general introduction to this regulation. This represents a reasonable attempt to effectuate the goal as to the need to cover the demand for more parking areas, particularly in high density populated or business locations. *See Regulation 3, General Purposes.*

Additionally, it must be noted, herein plaintiff did not submit the regulation at issue with the complaint nor with its motion requesting judgment on the pleadings, or any relevant portion thereof with its corresponding translation into the English language. Plaintiff solely provided its interpretation and summary of the alleged portion of the regulation it objects. Regulation No. 8 cannot be examined in a vacuum, more so when issues of alleged constitutional dimension are being claimed. Legislation and regulations thereunder must demonstrate "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. Flores,* 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

Although the date in Regulation No. 8 of June 7, 1986, referring to roofed public parking areas, appears without any explanation, the regulation may well survive its public interest approach to roofed and unroofed public parking lots without such date constriction since we cannot say that the provision reflects a policy which is so clearly irrational on its face as to be arbi-

---

3. The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein, such as the whole regulation filed with the Department of State of the Commonwealth of Puerto Rico and facts susceptible to judicial notice.

trary, capricious, and an abuse of discretion.[4]

■ Furthermore, we cannot lose sight of the fact that constitutional considerations may be avoided when a logical interpretation of the provision so otherwise warrants. Thus, "prior to reaching any constitutional questions, federal courts must consider non-constitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (*citing Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936)). *See Buchanan v. Maine*, 469 F.3d 158 (1st Cir.2006).

■ Finally, a perusal of Regulation No. 6753 as a whole in the instant case, which entails in its item 8 the provision objected by plaintiffs (referred at all times as Regulation No. 8), does not constitute a taking of property without due process of law as argued by plaintiff's judgment on the pleadings as explained herein below.[5]

Regulation No. 6753 provides for administrative claims to be filed and reviewed upon holding a hearing pursuant to procedures established under Law No. 170 of August 12, 1988, as amended. The administrator of public parking facilities may also request reconsideration to DACO as to any maximum rate Resolution it had issued. Reconsideration or review may also be obtained each natural year when reasonable profits are not obtained with the maximum rate established. A new administrator who inherits the rate of the former administrator may seek review of the rate within ninety (90) days of start of operations. *Regulation 7*.[6]

Plaintiff herein has not submitted any arguments it availed itself of the provisions to obtain review of the rates nor that same do not allow to attain a profit or even having received an adverse and unreasonable determination in violation of due process. For all purposes, plaintiff has not shown it availed itself of the mechanism provided by the challenged rule to seek redress before attacking the constitutionality of the provisions in this forum nor has it argued that such effort would have been fruitless. Accordingly, plaintiff's averment of undergoing a taking without due process cannot pass muster.

**B. Section 1983 claims—Qualified Immunity.**

■ Plaintiff has also filed action against co-defendant Secretary García Padilla in his personal capacity for acting under color of law in the deprivation of plaintiff's rights, privileges and immunities when implementing an unconstitutional policy and in denying to plaintiff's equal protection and due process. If default had not been entered, defendant García Padilla could have reasonably raised entitlement to the protection of qualified immunity,

---

4. A different analysis may have ensue if the claim had been filed by other roofed public parking facilities which were built just prior to June 7, 1986, and cannot reasonably see the different treatment afforded as to them. However, plaintiff International Parking has not standing to represent other roofed public parking facilities.

5. The Takings Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. *See Dolan v. Tigard*, 512 U.S. 374, 383–84, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

6. Plaintiff is apprised that upon seeking review and/or appeal of this report and recommendation, it should comply with the required reference to English translation of documents in that the United States District Court for the District of Puerto Rico must sift out non-English materials, and parties should submit only English language materials. *See Gonzalez–De–Blasini v. Family Dept.*, 377 F.3d 81 (1st Cir.2004); *see also Estades–Negroni v. Associates Corp. of North America*, 359 F.3d 1 (1st Cir.2004).

once it is established having followed a neutral and reasonable application of regulations consonant with the purposes and goals of sound public policy. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■ The Court of Appeals for the First Circuit has identified a three step process for evaluating qualified immunity claims, to wit; 1) whether the claimant has alleged the deprivation of an actual constitutional right; 2) whether the right was clearly established at the time of the alleged action or inaction; and 3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Nelson v. Kline*, 242 F.3d 33 (1st Cir.2001); *Abreu–Guzman v. Ford*, 241 F.3d 69, 73 (1st Cir.2001); *see Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir.2004); *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 141 (1st Cir.2001).

■ The doctrine of qualified immunity protects defendants in their individual capacities from liability for money damages. "Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 704 (1st Cir.1993); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ringuette v. City of Fall River*, 146 F.3d 1, 5 (1st Cir.1998). In deciding whether an officer is entitled to qualified immunity, the Court must first determine whether the officer's alleged conduct violated a constitutional right. *Chavez v. Martinez*, 535 U.S. 1111, 122 S.Ct. 2326, 153 L.Ed.2d 158 (2002) (*citing*

*Saucier v. Katz*, 533 U.S. at 201, 121 S.Ct. 2151). "If not, the officer is entitled to qualified immunity, and [the Court] need not consider whether the asserted right was "clearly established." " *Id.*

As the First Circuit Court of Appeals has noted, "[t]his particular order of analysis 'is designed to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." ' " *Id.* (citations omitted). Addressing the constitutional question first "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.* In the present case even if the first two questions might be answered in the affirmative, it must then be determined whether defendant García Padilla believed that the action taken violated a clearly established constitutional right. "Qualified immunity specially protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." *Santana v. Calderón*, 342 F.3d 18, 23 (1st Cir.2003) (*quoting Ryder v. United States*, 515 U.S. 177, 185, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)). For these reasons, the Court has expressed that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id. See Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

Plaintiff International Parking' 's claim against defendant Secretary García Padilla is the alleged violation of Equal Protection as secured by the United States Constitution as to application of Regulation No. 8. Plaintiff's equal protection claims under the United States Constitution would not be found herein in the absence of invidious classification or discriminatory animus,

which is not present under the regulations object of this action, neither on the face of said provisions nor its application. Section 1983 does not confer substantive rights. It solely provides a venue for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

For judgment on the pleadings to be entered, the moving party must establish being entitled to same. There is no showing in plaintiffs' complaint defendant Secretary García Padilla's conduct in his personal capacity deprived a person of rights, privileges or immunities secured by the Constitution of the United States; *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 561–562 (1st Cir.1989) (*quoting Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). Thus, Secretary García Padilla would be entitled to qualified immunity in his personal capacity, if the Court adopts the first part of this report and recommendation finding the provisions at issue not arbitrary or capricious and plaintiff unable to claim on the pleadings a constitutional violation.

## V. CONCLUSION

In view of the foregoing, this Magistrate Judge recommends judgment on the pleadings (Docket No. 10) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 20th day of April of 2007.